**EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ASTELLAS PHARMA INC., ASTELLAS IRELAND CO., LTD., and ASTELLAS PHARMA GLOBAL DEVELOPMENT, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   Civil Action No. 16-905-SLR-CJB |
| | )   CONSOLIDATED |
| ACTAVIS ELIZABETH LLC, et al., | ) ) |
| Defendants. | ) ) |

**MEMORANDUM ORDER**

At Wilmington this **20th day of July, 2017**.

**WHEREAS**, on July 19, 2017 the Court held a teleconference regarding protective order disputes between Plaintiffs Astellas Pharma Inc., Astellas Ireland Co., Ltd., and Astellas Pharma Global Development, Inc. (collectively, "Plaintiffs"), and Defendants Actavis Elizabeth LLC, Lupin Ltd., Lupin Pharmaceuticals, Inc., Zydus Pharmaceuticals (USA), Inc., Cadila Healthcare Ltd. (d/b/a Zydus Cadila), Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., Aurolife Pharma LLC, Prinston Pharamaceutical Inc., Sawai Pharmaceutical Co., Ltd., Sawai USA, Inc., Sandoz, Inc., Apotex Inc. and Apotex Corp. (collectively, "Defendants")[1];

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1.      As to the parties' first dispute, which relates to production of non-party confidential information pursuant to the Protective Order, the Court will ADOPT Plaintiffs'

---

[1]      Plaintiffs and Defendant Windlas Healthcare Pvt. Ltd. ("Windlas") are bound by the Stipulation and Order to Stay Claims and Be Bound By Result in Litigation, dated July 11, 2017.  (D.I. 60; *see also* D.I. 61 at 1 n.1)  Windlas did not participate in the teleconference.

proposed language. (*See* D.I. 61, ex. 1 at ¶ 3)[2] This dispute is really about the process by which confidential third-party information that is in Defendants' possession will be disclosed or withheld, and the burdens associated with the process for producing or withholding such information. The Court finds that Plaintiffs' proposal best accomplishes the goals of facilitating the efficient flow of discovery, while also providing a full and fair mechanism for non-parties to intervene and object to the disclosure of their confidential information.

2.      The parties' second dispute relates to the disclosure of Plaintiffs' confidential information between Defendants. As to this dispute, the Court will again ADOPT Plaintiffs' proposed language. (*See id.* at ¶ 10) That language specifies that the proposed restrictions shall apply only to confidential information "that relates *solely* to the validity, enforceability or infringement of [United States] Patent No. 6,346,532 (the '532 patent)[.]" (*Id.* (emphasis added)) It is not disputed that if Plaintiffs possess records that do in fact relate *solely* to the validity, enforceability or infringement of the '532 patent, then the Defendant Groups that are not asserting that the '532 patent is invalid, unenforceable, and/or not infringed would have no right to such documents under Federal Rule of Civil Procedure 26, since the records would not be "relevant to any [of those Defendant Group's] claim[s] or defense[s.]" Fed. R. Civ. P. 26(b). And the Court finds that Plaintiffs' proposal provides the best way for the parties to identify and tee up with the Court any disputes about whether a record falls into this category, and whether it may be shared with certain other Defendants.

3.      With regard to the parties' third dispute, which relates to the disclosure by

---

[2]      The parties shall change the phrase "the Court shall order production of" in Plaintiffs' proposal to "the Producing Party shall produce[.]"

2

Plaintiffs of Defendants' confidential information between other Defendants, the Court will ADOPT Defendants' proposed language. (*See* D.I. 61, ex. 1 at ¶ 10)  In balancing here between the competing interests of (1) litigation-related efficiency and (2) protecting the parties' confidential information, the Court errs on the side of the latter.  The Court notes that Defendants' proposed language is consistent with other Protective Orders in ANDA cases within this District. *See, e.g., AstraZeneca LP v. Sigmapharm Labs., LLC*, Civil Action No. 15-1000-RGA (D. Del. Apr. 26, 2016) (D.I. 71 at ¶ 16); *Forest Labs., LLC v. Apotex Corp.*, Civil Action No. 15-18-GMS (D. Del. Sept. 18, 2015) (D.I. 48 at ¶ 19).

      4.     As to the parties' final dispute, which concerns participation in post-grant proceedings by those with access to confidential information, the Court will ADOPT Plaintiffs' proposed language, and DENY Defendants' request to preclude Plaintiffs' trial counsel from "providing recommendations regarding drafting, crafting, or amending of patent claims" in any post-grant proceedings with respect to patents involving mirabegron.  (D.I. 61, ex. 1 at ¶ 10(A)) In adjudicating disputes over what kind of prosecution bar should be entered, the Court must balance (1) any unacceptable risk of inadvertent disclosure or competitive use of confidential information against (2) the potential harm the party affected by the portion of the bar at issue would face were that portion adopted, and were it denied its counsel of choice. *See Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, Civil Action No. 15-691-LPS-CJB, 2016 WL 447794, at *1 (D. Del. Feb. 4, 2016) (hereinafter, "*TSST-K*") (citing *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1379-80 (Fed. Cir. 2010)).  It is Defendants' burden to show good cause for its proposed provision effecting a prosecution bar. *See, e.g., id.* at 1 n.1; *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 183-84 (D. Del. 2010).  And here, there is very little

concrete evidence in the record regarding either (1) the risk of inadvertent disclosure or competitive use of confidential information, or (2) the potential harm that Plaintiffs would suffer were they to be denied the counsel of their choice. The Court is also cognizant that "it is hard to dispute that the magnitude of [the risk of inadvertent disclosure of or competitive use of confidential information] is far less pronounced with respect to an IPR proceeding (in which [the patentee's] claims may be only narrowed, not enlarged) as compared to the prosecution of a new patent[.]" *TSST-K*, 2016 WL 447794, at *2 (citations omitted). In light of this, and the lack of record evidence on the issue, the Court finds that Defendants have not met their burden here. However, the Court will consider a request to modify the Protective Order in the future as to this issue, if the evidence warrants it. *Cf. Boston Scientific Corp. v. Cook Group Inc.*, Civil Action No. 15-980-LPS-CJB (D. Del. Apr. 18, 2016) (D.I. 36 at ¶ 9).

     5.     The parties are ORDERED to submit a final proposed Protective Order, incorporating the above decisions, by no later than **July 27, 2017**.

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

4

**EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ASTRAZENECA LP, ASTRAZENECA AB,
ASTRAZENECA UK LIMITED, and
ASTRAZENECA PHARMACEUTICALS LP,

     Plaintiffs,

     v.

SIGMAPHARM LABORATORIES, LLC,

     Defendant.

) Civil Action No.: 15-1000-RGA
) (CONSOLIDATED)

## STIPULATED PROTECTIVE ORDER
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(c)

WHEREAS, Mylan Pharmaceuticals Inc. ("Mylan") is named Defendant in Civil Action

Nos. 15-0999-RGA and 15-1000-RGA.

WHEREAS, Sigmapharm Laboratories, LLC ("Sigmapharm") is named Defendant in

Civil Action No. 15-1000-RGA.

WHEREAS, InvaGen Pharmaceuticals, Inc. ("InvaGen") is named Defendant in Civil

Action Nos. 15-1000-RGA and 15-1001-RGA.

WHEREAS, Watson Laboratories, Inc. ("Watson") is named Defendant in Civil Action

Nos. 15-1000-RGA and 15-1002-RGA.

WHEREAS, HEC Pharm Co., Ltd., HEC Pharm Group, and HEC Pharm USA, Inc.

(collectively, "HEC") are named Defendants in Civil Action Nos. 15-1000-RGA and 15-1041-

RGA.

WHEREAS, Amneal Pharmaceuticals LLC, and Amneal Pharmaceuticals of New York,

LLC (collectively, "Amneal") are named Defendants in Civil Action Nos. 15-1000-RGA and 15-

1056-RGA.

WHEREAS, Prinston Pharmaceutical Inc. ("Prinston") is named Defendant in Civil Action Nos. 15-1000-RGA and 15-1057-RGA.

WHEREAS, Apotex Inc. and Apotex Corp. (collectively "Apotex") are named Defendants in Civil Action Nos. 15-1000-RGA and 15-1058-RGA.

WHEREAS, AstraZeneca LP, AstraZeneca AB, AstraZeneca UK Limited, and AstraZeneca Pharmaceuticals LP (collectively, "AstraZeneca" or Plaintiffs) are named plaintiffs in the actions mentioned above ("the Actions");

WHEREAS, in the course of this Action, one or more of the AstraZeneca Plaintiffs may seek disclosure of information that Mylan, Sigmapharm, InvaGen, Watson, HEC, Amneal, Prinston, and/or Apotex (collectively "Defendants") regard as proprietary or confidential trade secret, technical, business, financial, or personnel information;

WHEREAS, in the course of this Action, any of Defendants may seek disclosure of information that one or more of the AstraZeneca Plaintiffs regards as proprietary or confidential trade secret, technical business, financial, or personnel information;

WHEREAS, in the course of this Action, any of Defendants, and/or Plaintiffs may seek disclosure of third-party information to any one of them which the third party regards as proprietary or confidential trade secret, technical, business, financial, or personnel information; and

WHEREAS, the parties to the Actions desire to establish a mechanism to protect and govern the use of any disclosure of such proprietary or confidential trade secret, technical, business, financial, or personnel information;

IT IS HEREBY STIPULATED by and among the parties hereto, by their respective undersigned counsel of record, that this Stipulated Protective Order shall govern the disclosure of

proprietary or confidential trade secret, technical, business, financial, or personnel information in this Action.

## DEFINITIONS

1.      "Order" and "Protective Order" mean this Stipulated Protective Order.


2.      "Party" means any named party to this Action and any entities that have agreed to be bound by discovery; where more than one related entities are a defendant or plaintiff, those related entities shall be considered a singular Party.


3.      "Third Party" means a person or entity who is not a party to this Action and who is requested to provide information or testify in connection with this Action or whose information is disclosed in this Action.


4.      The "Action" means Civil Actions that have been consolidated for pre-trial and validity purposes into Civil Action No. 15-1000-RGA.  "Related infringement actions" include Civil Action No. 15-0999-RGA; Civil Action No. 15-1000-RGA; Civil Action No. 15-1001-RGA; Civil Action No. 15-1002-RGA; Civil Action No. 15-1041-RGA; Civil Action No. 15-1056-RGA; Civil Action No. 15-1057-RGA; and Civil Action No. 15-1058-RGA.


5.      "CONFIDENTIAL INFORMATION" means any information, document, or thing, or portion of any document or thing: (a) that contains private or confidential personal information, (b) that contains information received in confidence from third parties, or (c) which the producing party otherwise believes in good faith to be entitled to protection under Rule

3

26(c)(1)(G) of the Federal Rules of Civil Procedure. Any Party to this litigation or any Third
Party covered by this Order who produces or discloses any CONFIDENTIAL INFORMATION,
including without limitation any information, document, thing, interrogatory answer, admission,
pleading, or testimony, shall mark the same with the foregoing or similar legend:
"CONFIDENTIAL".


      **6.**     "HIGHLY CONFIDENTIAL INFORMATION" means any information,
document, or thing, or portion of any document or thing that contains highly sensitive business
or personal information, the disclosure of which is highly likely to cause significant harm to an
individual or to the business or competitive position of the designating party, and shall include,
without limitation, highly sensitive or highly proprietary technical or business information
including information concerning (a) research and development, formulation, patent applications,
strategic plans, financial, manufacturing, and marketing plans; (b) a party's or third-party's
ownership, organization, management, financial planning and financial performance; (c) a
Party's or Third Party's current products, processes, business plans, competitive strategies, or
business relationships (including past information indicative of current practices); (d) a Party's or
Third Party's potential future products, processes, business plans, competitive strategies, or
business relationships; (e) new drug applications or abbreviated new drug applications;
(f) personal information, patient information or personal health information including
information protected under the Health Insurance Portability and Accountability Act of 1996
("HIPAA"); (g) physical samples provided through discovery; (h) data, reports, notes, or other
documentation generated in the testing or analysis of the physical samples provided through
discovery ("Derivative Testing Information"); (i) any part of a Drug Master File, Chemistry

4

Manufacturing and Controls, and any formulation descriptions (e.g., the identity and proportions of inactive ingredients) in an Abbreviated New Drug Application ("ANDA"), an Investigational New Drug, and/or a New Drug Application of a party; and (j) parties' launch plans.  Other confidential trade secrets or business information not falling into one of these enumerated categories may be designated as "Confidential Information" or "Highly Confidential Information" as appropriate.  Any party to this litigation or any third party who is covered by this Order, who produces or discloses any Highly Confidential material, including without limitation any information, document, thing, interrogatory answer, admission, pleading, or testimony, shall mark the same with the foregoing or similar legend: "HIGHLY CONFIDENTIAL".

   **7.**   CONFIDENTIAL INFORMATION and HIGHLY CONFIDENTIAL INFORMATION shall not include:

   a.   information that is in the public domain at the time of disclosure;

   b.   information that after disclosure is published or becomes part of the public domain through no fault of a person receiving information under this Order, but only after it is published or comes into the public domain;

   c.   information that is already in the possession of a Party receiving such information without any confidentiality obligations at the time of disclosure;

   d.   information disclosed by a Third Party that is not subject to any confidentiality obligations at the time of the disclosure; or

   e.   information that was, is, or becomes expressly released from being designated CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION, by the Producing Party or by order of the Court.

5

**8.**      "PROTECTED INFORMATION" means "CONFIDENTIAL INFORMATION"
and/or "HIGHLY CONFIDENTIAL INFORMATION."

**9.**      "Outside Counsel" means outside attorneys of record and attorneys serving under
their direct supervision, including but not limited to outside attorneys admitted *pro hac vice* in
this Action and their respective stenographic, clerical, and legal assistant employees.

**10.**

**[Plaintiffs' proposal:** "Designated In-House Representative" means an attorney in the
legal or patent department of a Party with litigation oversight responsibilities. The number of
individuals specified as "Designated In-House Representative" shall be limited to a maximum of
two in-house attorneys for each Party.  Any such in-house representatives will execute an
undertaking as set forth in Exhibit A acknowledging the terms of this Order and agreeing to be
bound by it.]

**[Defendants' proposal:** "Designated In-House Representative" means an attorney in the
legal or patent department of a Party with litigation oversight responsibilities or, in the case of a
Defendant that lacks in-house attorneys in its legal or patent department, a non-attorney
employed by that Defendant with litigation oversight responsibilities. The number of individuals
specified as "Designated In-House Representative" shall be limited to a maximum of two in-
house attorneys/non-attorneys for each Party.  Any such in-house representatives will execute an
undertaking as set forth in Exhibit A acknowledging the terms of this Order and agreeing to be
bound by it.]

6

## TERMS OF THE ORDER

**11.** *Use of PROTECTED INFORMATION*

Except by consent of the producing Party or order of this Court and subject to the provisions of Paragraphs 16 and 26 hereof, a Party or person bound by this Order shall not (1) use any PROTECTED INFORMATION received pursuant to this Order for any purpose other than this Action, including without limitation any other litigation, research, development, manufacture, submissions to the U.S., European or any other Pharmacopoeia, marketing purpose, regulatory purpose, patent prosecution or acquisition, communication with any regulatory agency including, but not limited to, the FDA, or any business or competitive purpose or function, or (2) disclose or release to any person not authorized under this Order any PROTECTED INFORMATION received pursuant to this Order.

The recipient of any PROTECTED INFORMATION that is provided under this Order shall maintain such information in a secure and safe place and shall exercise reasonable care regarding the maintenance, storage, custody, and use of such information.

Nothing in this Order shall bar or otherwise restrict any Outside Counsel or Designated In-House Representative from rendering advice to his or her Party-client in this Action. Nothing in this Order shall bar or otherwise restrict such Party-client from relying upon such Outside Counsel's or Designated In-House Representative's examination and/or analysis of PROTECTED INFORMATION, provided, however, that in rendering such advice and in otherwise communicating with such client, such person shall not disclose any PROTECTED INFORMATION to unauthorized persons.

7

12.   *Patent Office, Business, and Regulatory Activities*

Anyone having access to HIGHLY CONFIDENTIAL INFORMATION shall not engage except by leave of court, directly or indirectly, in

(i) any patent prosecution [Defendants' Proposed Addition: on behalf of a party with the ability to propose new claims or claim amendments] related to the subject matter of U.S. Patent Nos. 6,251,910; 6,525,060; 7,250,419; 7,265,124; 8,425,934; and any other patents or patent applications directed to ticagrelor or formulations containing ticagrelor, other than (a) to submit materials pursuant to 37 CFR 1.56 and (b) as required to provide notices related to litigation, *e.g.* under 21 C.F.R. § 314.107(f)(2),

RCA

[Plaintiffs' Proposal: for the duration of these Actions (including any appeals) and for one year after final termination of these Actions (including any appeals); or]

[Defendants' Proposal: for the longer of: (a) duration of these Actions (including any appeals) and for one year after final termination of these Actions (including any appeals) or (b) the final abandonment or issuance of all divisionals, continuations, continuations-in-part, reissues or reexaminations from the Patents-in-Suit; or]

R6t

(ii) any counseling, litigation or other work before or involving the U.S. Food & Drug Administration ("FDA") or similar agency in a foreign country, including but not limited to the preparation and filing of [Plaintiff's Proposed Addition: or responding to] citizen petitions, that relates to the subject matter of U.S. Patent Nos. 6,251,910; 6,525,060; 7,250,419; 7,265,124; and 8,425,934, and any other patents or patent applications directed to ticagrelor or formulations containing ticagrelor, including regarding any New Drug Application or Abbreviated New Drug Application concerning ticagrelor,

Boff

8

but excluding such work concerning updating the FDA on the status of this Action or responding to the FDA regarding the receiving party's own NDA or ANDA or is directed toward obtaining or maintaining approval under such NDA or ANDA [Defendants' Proposed Addition: , including advising the client or responding to inquiries concerning carve-outs, exclusivities or responding to citizen petitions]; or

    (iii)  making competitive business decisions concerning products containing ticagrelor.


    [Plaintiffs' Proposal:  For avoidance of doubt, prohibited "patent prosecution" does not include participation in reissue proceedings, reexamination proceedings, *inter partes* reviews, post grant reviews, or any other post-grant contested proceedings in the U.S. Patent & Trademark Office or any foreign patent office provided, however, that the person having access to HIGHLY CONFIDENTIAL INFORMATION may not amend, draft, or consult with counsel regarding the amendment of patent claims in such proceedings.]

    [Defendants' Proposal:  For avoidance of doubt, prohibited "patent prosecution" as used herein includes representing the patentee in any proceedings in which new claims or claim amendments can be proposed during the proceeding, which may include reissue proceedings, reexamination proceedings, *inter partes* reviews, post grant reviews, or other contested proceedings in which the scope of existing claims is changed or new claims can be pursued in the U.S. Patent & Trademark Office or any foreign patent office.]


    [Plaintiffs' Proposal:  For avoidance of doubt, negotiating or executing an agreement settling litigation, including responsibilities related to any financial terms of such an agreement shall not be deemed to be related to any "competitive business decisions."]

[Defendants' Proposal: For avoidance of doubt, purely legal decision-making responsibilities relating to ticagrelor, including without limitation, for example, having responsibilities for negotiating or executing an agreement settling litigation, responsibilities related to any financial terms of such an agreement and responsibilities relating to advising about launch dates shall not be deemed to be related to any "competitive business decisions." An individual who merely provides legal advice regarding the development of ticagrelor products shall not be disqualified under this provision.]

### 13.   *Manner of Identifying Produced Document*

Documents produced pursuant to discovery in this Action shall, where possible, bear a unique, per-page, identifying number, except unique identifying numbers are not required when documents are produced only for inspection.

### 14.   *Manner of Designating PROTECTED INFORMATION*

a.    Physical objects or documents containing CONFIDENTIAL INFORMATION shall be designated by stamping, marking, or affixing on each page or onto the physical object or its container thereto an identifying legend in the general form:

[party name] CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER

All correspondence, legal memoranda, motion papers, pleadings, and other written materials that quote or refer to the substance of any PROTECTED INFORMATION shall also be treated as PROTECTED INFORMATION in accordance with the provisions of this Order, and at least the cover or first page of such documents shall be marked according to this paragraph.

10

Physical objects or documents containing HIGHLY CONFIDENTIAL INFORMATION shall be designated by stamping, marking, or affixing on each page or onto the physical object or its container thereto an identifying legend in the general form:

[party name] HIGHLY CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER

In the event a receiving Party generates any paper printout, copy, image, or transcription from any designated physical object, such Party must stamp each page with the appropriate legend, and the paper printout or transcription shall be treated as PROTECTED INFORMATION.

    b.  PROTECTED INFORMATION revealed by inspection of things or premises shall be designated as "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL INFORMATION" before the inspection by the Party or Third Party permitting inspection by specifying in writing the locations of and things which contain PROTECTED INFORMATION.

    c.  If documents are produced for inspection only, then all such documents will be treated as PROTECTED INFORMATION unless and until the producing party subsequently produces any such documents without a "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL INFORMATION" designation.  Such inspection, however, shall be conducted only by persons authorized under this Order to have access to HIGHLY CONFIDENTIAL INFORMATION.

    d.  Any party may designate any or all portions of depositions taken pursuant to this action as "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL INFORMATION" either (1) by making a statement on the record at the deposition, or (2) by

serving notice in writing to counsel of record within thirty (30) days of receiving the transcript of the deposition. All deposition transcripts not previously designated shall be deemed to be and shall be treated as if designated "HIGHLY CONFIDENTIAL INFORMATION" for a period of up to thirty (30) days from receipt of the official transcript of the deposition by all parties to the deposition. A deponent may review the transcript of his or her deposition at any time.

        e.      A Party or Third Party that inadvertently fails to designate PROTECTED INFORMATION pursuant to this Order at the time of production shall be entitled to make a correction at any time. No showing of error, inadvertence, or excusable neglect shall be required for such correction. Such correction and notice thereof shall be made in writing, accompanied by substitute copies of each item, appropriately designated as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION. The Party receiving the PROTECTED INFORMATION before the notice and correction by the producing Party or Third Party shall return to Outside Counsel for the producing Party or Third Party all such previously undesignated PROTECTED INFORMATION with all copies, or certify destruction thereof, within five (5) business days after receiving the substitute copies. Upon receipt of correction and notice, the receiving Party shall honor the provisions of this Order and shall consider and treat as properly designated CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION the previously undesignated or improperly designated information. Under such circumstances, no receiving Party shall have any obligation or liability due to any disclosure of the PROTECTED INFORMATION that occurred before the receipt of correction and notice; provided, however, that any subsequent disclosure shall be in accordance with such corrected designation.

**15.** *No Admission or Waiver*

Confidentiality designations are intended solely to facilitate compliance with discovery in this Action. Neither such designation nor treatment in conformity with such designation shall be construed as an admission or agreement by any Party or Third Party that the designated information constitutes or contains any trade secret or PROTECTED INFORMATION. Failure to so designate information shall not constitute a waiver of any claim by a Party or Third Party that information contains PROTECTED INFORMATION.

Nothing in this Order is intended as any representation that any (i) information, (ii) type or category of information, or (iii) type or category of documents is necessarily relevant to any issue in this litigation, or constitutes discoverable information. The parties reserve their rights to the production of documents that may fall within the scope of the definition of PROTECTED INFORMATION.

**16.** *Treatment of PROTECTED INFORMATION*

Absent the consent of the producing Party, documents or information designated as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION shall be retained by the receiving or other counsel of any non-designating party and may be disclosed by any non-designating party only to:

(i) Outside Counsel of record for any Party to the Action, their staff, and any litigation service contractors whose function in connection with this Action requires access to such information including, for example, trial graphics personnel, contract attorneys, e-discovery vendors and consultants, translators, and photocopy services;

13

(ii) Designated In-House Representatives for the receiving Party who have signed the a Declaration of Acknowledgment and Agreement to be Bound by Protective Order ("Exhibit A"), consistent with the prohibition on HIGHLY CONFIDENTIAL INFORMATION of Paragraph 20 below, and their immediate staff, but only to the extent necessary to carry out duties related to this litigation;

(iii) any person agreed to in writing by the producing Party;

(iv) outside experts and consultants for any Party to the Action who meet the requirements of Paragraph 19 below and who have executed the Confidentiality Undertaking (Exhibit A), but only to the extent necessary to carry out duties related to this litigation;

(v) stenographers, court reporters, videographers or other individuals solely involved for the recordation and transcription of deposition or court proceedings or for like purposes at the request and consent of the parties; and

(vi) the Court, its staff, and designees.

~~[Plaintiffs' Proposal: Nothing herein shall prevent one Party from using another Party's PROTECTED INFORMATION on issues common to the consolidated Action in order to avoid burdening the Court with unnecessary subpoenas on a Party already of record in the litigation.]~~

*RCAS*

~~[Defendants' Proposal:~~ For avoidance of doubt, absent written consent from the producing party, Plaintiffs may not produce or otherwise make available one Defendant's PROTECTED INFORMATION to any other Defendant. Furthermore, Plaintiffs may not use PROTECTED INFORMATION produced by one Defendant to support Plaintiffs' claims or defenses against any other Defendant. Plaintiffs also may not use PROTECTED INFORMATION produced by one Defendant during fact deposition or cross-examination of another Defendant. To the extent a party contends that certain documents should be made

14

available to another party in the case, the parties agree to make good-faith efforts to address such situations on a case-by-case basis and resolve the issue.

### 17.     *Actions to be taken in the event of unauthorized disclosure of PROTECTED INFORMATION*

If PROTECTED INFORMATION is disclosed to an unauthorized person or in a manner not authorized by this Order, the Party responsible for the unauthorized disclosure shall immediately upon learning of the unauthorized disclosure provide all pertinent facts relating to such disclosure (including the name(s) of the person(s) to whom disclosed) to the attention of the Outside Counsel for the designating Party or Third Party, without prejudice to other rights and remedies of the designating Party or Third Party. The Party responsible for the unauthorized disclosure shall use its best efforts to prevent further unauthorized use or disclosure of PROTECTED INFORMATION, shall use its best efforts to immediately retrieve all copies of the PROTECTED INFORMATION, and otherwise mitigate harm.

### 18.     *Additional Permissible Disclosure of PROTECTED INFORMATION*

Documents designated PROTECTED INFORMATION also may be disclosed and used during a deposition or at trial, subject to appropriate safeguards necessary to protect sensitive information contained in the documents, to: (i) persons listed on the face of the documents; (ii) persons otherwise shown to be the originator, author, or a recipient of such documents; or (iii) persons shown to have knowledge of the PROTECTED INFORMATION contained in the documents; or (iv) present employees, agents, and representatives of the designating Party or Third Party, its subsidiaries, or affiliates. Nothing in this Paragraph shall prevent a Party or a

15

Third Party from giving its consent to having its PROTECTED INFORMATION disclosed to
any witness during a deposition or at trial.

## 19.    *Access to PROTECTED INFORMATION by Outside Experts and Consultants*

As specified in Paragraph 16 above, outside experts or outside consultants and their staff
whose advice and consultation are being or will be used in preparation for and/or at trial of this
Action may have access to documents and information designated as PROTECTED
INFORMATION pursuant to the following procedure:

a.    Each such outside expert or consultant shall read this Order and execute a
Confidentiality Agreement in the form attached hereto as Exhibit A before obtaining access to
any PROTECTED INFORMATION.

b.    Each such Confidentiality Agreement executed by a Party's expert(s) or
consultant(s), along with a current copy of the expert's or consultant's curriculum vitae, a list of
each expert or consultant's publications for the preceding ten (10) years, and a list of each expert
or consultant's trial and/or deposition testimony given in the preceding four (4) years shall be
transmitted to Outside Counsel for the Party from which the PROTECTED INFORMATION
was obtained at least five (5) business days before the disclosure of any PROTECTED
INFORMATION.

c.    If a Party believes that disclosure of its PROTECTED INFORMATION to
another Party's expert(s) or consultant(s) would injure or prejudice it, the Party may object in
writing within five (5) business days of receipt of the materials described in Paragraph 19(b)
above. If timely objection is made, the parties shall attempt in good faith to resolve the disclosure

16

issue. If the parties cannot resolve a dispute regarding disclosure to an outside expert or consultant, the objecting Party may apply to the Court for an order prohibiting disclosure of its PROTECTED INFORMATION to the outside expert or consultant. The objecting Party has ten (10) business days from receipt of the materials described in Paragraph 19(b) above to move the Court to preclude the outside expert or consultant from viewing its PROTECTED INFORMATION. If the objecting Party does not timely object and bring a timely motion, PROTECTED INFORMATION may be disclosed to the outside expert or consultant.

**20.**   *Designated In-House Representatives*

(a) Each Party may designate up to two Designated In-House Representatives, as provided in Paragraphs 10 and 16, above, by providing notice to the other parties along with a signed Declaration of Acknowledgment and Agreement to be Bound by Protective Order annexed as Exhibit A from each such Designee. The notice shall include the employee's name, description of the employee's position(s), title(s), and responsibilities for the past five years. A Designated In-House Representative may be replaced by substitute Designated In-House Representative upon notification regarding the substitution.

(b) Material designated as HIGHLY CONFIDENTIAL INFORMATION shall not be disclosed to any Designated In-House Representative without prior written agreement of the designating Party or Third Party or by Order of the Court. With respect to any expert report served in this action, and any pleading, brief or other paper filed with the Court or served on the Parties in this action that contains or refers to any HIGHLY CONFIDENTIAL INFORMATION of a Party, and upon request, the producing Party whose HIGHLY CONFIDENTIAL INFORMATION is disclosed therein shall provide to the receiving party a redacted version

17

within three (3) business days of filing or service for disclosure to the Designated In-House Representatives of such receiving party who are qualified recipients of CONFIDENTIAL INFORMATION under the terms of Section 16(ii). This redacted version shall only redact such HIGHLY CONFIDENTIAL INFORMATION as that term is defined in this Order, the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the producing Party. In the event that the receiving party believes that any information redacted pursuant to this Paragraph can appropriately be disclosed to the Designated In-House Representatives, the Parties shall meet and confer to address such concerns and bring the matter to the Court's attention if required.

(c) If a Party believes that disclosure of its PROTECTED INFORMATION to a Party's Designated In-House Representative would injure or prejudice it, the Party may object in writing within five (5) business days of receiving notice of the designation from the designating Party pursuant to paragraph (a) above. If timely objection is made, the parties shall attempt in good faith to resolve the disclosure issue. If the parties cannot resolve a dispute regarding disclosure to a Designated In-House Representative, the objecting Party may apply to the Court for an order prohibiting disclosure of its PROTECTED INFORMATION to the Designated In-House Representative. The objecting Party has fifteen (15) business days from receipt of the notice of the designation from the designating Party pursuant to paragraph (a) above to move the Court to preclude the Designated In-House Representative from viewing its PROTECTED INFORMATION. If the objecting Party does not timely object or bring a timely motion, PROTECTED INFORMATION may be disclosed to the Designated In-House Representative.

## 21. *Effect of this Order on Discovery*

18

This Order shall not preclude or limit the right of any Party or Third Party to oppose discovery on any ground which would otherwise be available.

## 22.     *Inadvertent Production and Non-Waiver of Privileges*

Pursuant to Federal Rule of Evidence 502, inadvertent production in the course of discovery of any information, in any form (whether properly designated as PROTECTED INFORMATION or not) shall not waive any privilege or immunity that would otherwise attach to the information produced, provided that the producing Party or Third Party notifies the Outside Counsel for the receiving Party of the claim of privilege or immunity within seven (7) business days after discovery of the inadvertent production. Upon such notice, the receiving Party and Outside Counsel for the receiving Party shall return to the producing Party or Third Party all documents and things containing information claimed to be subject to any privilege or immunity along with any notes or summaries referring or relating to those documents and things, or certify destruction thereof, within ten (10) business days, except that where the receiving Party submits a motion, or other request, with the Court within ten (10) business days challenging the claim of privilege or immunity, return or destruction may be postponed until the date upon which such motion or request is resolved. The receiving Party, however, shall not use or rely upon any information produced and claimed to be subject to any privilege or immunity during the pendency of any motion or request challenging such claim. Returning or destroying inadvertently produced materials shall not constitute an acknowledgment that the information contained in the materials is privileged or immune from discovery.

19

Notwithstanding the provisions of the preceding paragraph, if any document or information is:

    a.    marked as an exhibit in a deposition at which the producing Party is represented by counsel;

    b.    presented as an exhibit to, or specifically identified in, any brief, legal memorandum, affidavit or declaration filed and/or served in this Action;

    c.    presented as an exhibit to, or specifically identified in any expert report served in this Action;

    d.    specifically identified in an interrogatory answer or other discovery response (or section of the Pretrial Order) served by the Producing Party in this Action; or

    e.    specifically identified at any hearing in this Action by any Party;

then the Producing Party will be entitled to relief under this Paragraph only if the Producing Party makes a claim of inadvertent production under this Paragraph within seven (7) business days after such use or identification of the document or information.

Nothing in this Protective Order shall preclude the receiving Party returning or destroying inadvertently produced material from seeking an order compelling the production of information previously produced inadvertently.

## 23. *Effect of this Order on Depositions*

Consistent with Paragraph 18 above and all other provisions of this Order, when a Party's or Third Party's CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION is discussed or disclosed during a deposition, the Party or Third Party may exclude any person not authorized under this Order to have access to the CONFIDENTIAL

20

INFORMATION or HIGHLY CONFIDENTIAL INFORMATION from the deposition while the CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION is disclosed or discussed.

## 24. *Discovery Requests Received from Third Parties*

In the event that a producing Party's PROTECTED INFORMATION is sought from a receiving Party or Third Party, by subpoena, by service with any legal process, by order, or otherwise, prompt written notice shall be given to the party who produced the PROTECTED INFORMATION to allow this Party to object to the production of such PROTECTED INFORMATION. Notice shall include a copy of such subpoena, legal process, or order. If the Party that produced the PROTECTED INFORMATION does not object to the disclosure of PROTECTED INFORMATION within ten (10) business days of receiving notice then the Party to whom the referenced subpoena is directed may produce such documents in response thereto. Any Third Party seeking such PROTECTED INFORMATION who takes action to enforce such subpoena or other legal process shall be apprised of this Order by the Party from whom the PROTECTED INFORMATION is sought. Nothing herein shall be construed as requiring anyone covered by this Order to contest a subpoena or other process, to appeal any order requiring production of PROTECTED INFORMATION covered by this Order, or to subject itself to penalties for non-compliance with any subpoena, legal process, or order.

## 25. *Discoverability of Expert Materials*

Discovery of communications between counsel and any independent expert or consultant retained or specially employed by that counsel shall be limited to factual information, analyses,

21

documents, and data relied on by the expert in rendering the opinions expressed in an expert

report or at trial.  Except as otherwise provided herein, all other communications between

counsel and the expert relating to the process of preparing an expert report or developing

opinions for trial, including all preliminary or draft reports, expert working papers, notes, and

communications relating thereto, shall be deemed exempt from discovery and use at trial.

### 26.     *Other Proceedings*

By entering this Order and limiting the disclosure of information in this case, the Court

does not intend to preclude another court from finding that information may be relevant and

subject to disclosure in another case. Any person or Party subject to this Order who becomes

subject to a motion to disclose another Party's or Third Party's information designated

PROTECTED INFORMATION pursuant to this Order shall promptly notify that Party of the

motion so that the party may have an opportunity to appear and be heard on whether the

information should be disclosed.

### 27.     *Modification and Additional Protective Orders*

Nothing herein shall prevent any Party from: (i) applying to the Court for a modification

of this Order; (ii) applying to the Court for further or additional protective orders; or (iii) making

an agreement with other parties in this Action to modify this Order, subject to Court approval.

### 28.  *Motion for Relief From PROTECTED INFORMATION Designation*

A Party shall not be obligated to challenge the propriety of a PROTECTED

INFORMATION designation at the time made, and failure to do so shall not preclude a

subsequent challenge during the pendency of the litigation. A Party challenging a designation

shall provide written notice to the Party or Third Party who produced the PROTECTED

INFORMATION.

Upon motion, the Court may affirm the appropriateness of the confidentiality designation

or order its removal from any information so designated. Regarding any motion concerning the

propriety of a confidentiality designation, the Party or Third Party making the designation shall

bear the burden of proof.

**29.** *Filing Documents Designated as PROTECTED INFORMATION with the*
*Court*

If a Party wishes to file or lodge with the Court for any purpose any document, transcript,

or thing containing PROTECTED INFORMATION, the Party shall designate the material as

PROTECTED INFORMATION as set forth in Paragraph 14 above, and it shall be filed under

seal in accordance with the provisions of the United States District Court for the District of

Delaware's Revised Administrative Procedures Governing Filing and Service by Electronic

Means dated October 16, 2014 ("the Procedures"). All such documents so filed shall be released

from confidential treatment by the Court only upon further order of the Court. In addition,

courtesy paper copies of sealed documents shall be filed with the Clerk's office as provided in

Section (G)(1) of the Procedures and shall be in a sealed envelope bearing the caption of the case

and the confidentiality designation.

If a Party files or lodges with the Court any document, transcription, or thing containing

information containing PROTECTED INFORMATION, the Party shall comply with the

provisions of Section (G) of the Procedures, including without limitation the provisions

governing the filing of a redacted version of the sealed document for public inspection within seven (7) calendar days.

Upon the failure of the filing or lodging Party to properly designate information in accordance with its confidentiality designation, any Party or Third Party who in good faith believes that designation and filing under seal is required may move the Court to file said information under seal within ten (10) business days of learning of the defective filing or lodging. Notice of such designation shall be given to all parties in this Action. Nothing in this provision relieves a Party of liability for damages caused by failure to properly file PROTECTED INFORMATION under seal. The burden of proving that such information should be sealed shall at all times remain on the party which designated the information.

**30.**   *Order Binding Date*

The parties agree that upon execution by the parties, it will be treated as though it has been "So Ordered."  Nothing in this Paragraph is intended to alter the provisions of Local Rule 26.2 of this Court or any prior agreement by a receiving party concerning the use of documents produced in this litigation under Local Rule 26.2.

**31.**   *Conclusion of Litigation*

At the conclusion of the Action, by judgment or otherwise, including all appeals, all documents and information designated in the Action as PROTECTED INFORMATION, including electronic copies thereof, shall be, at the receiving Party's election, either (1) returned within thirty (30) calendar days of the conclusion of the litigation after the later of a final judgment herein, the mandate has issued in the case of an appeal, or settlement of this Action to

the producing Party or Third Party along with all copies thereof, or (2) destroyed within thirty (30) calendar days after the later of a final judgment herein, the mandate has issued in the case of an appeal, or settlement of this Action by the receiving Party, after which the receiving Party will certify within forty-five (45) calendar days of the conclusion of the Action that such return and/or destruction has in fact been completed.  At the conclusion of the Action, all documents prepared in the Action by attorneys (including Outside Counsel and Designated In-House Counsel), and outside experts and consultants designated pursuant to Paragraph 13 above, containing summaries, abstracts, or quotations from documents designated by a Party or Third Party as protected by this Order, shall be destroyed within thirty (30) calendar days or kept within the internal files of the Outside Counsel for the Party creating such documents.

Any legal briefs or memoranda containing PROTECTED INFORMATION prepared by Outside Counsel of any Party may be retained in the Outside Counsel's internal files.  Outside Counsel may retain all documents and things that contain or reflect their attorney work product (e.g., notes, memoranda, drafts of pleadings, deposition summaries, document review summaries, documents reviewed in preparation for depositions, hearings, or trial, whether introduced or not), one copy of all correspondence, all pleadings, all deposition transcripts, all expert reports, all exhibits to depositions and expert reports, all hearing and trial transcripts, all hearing and trial exhibits, and all court-filed documents even though they contain PROTECTED INFORMATION, but such retained work product and documents shall remain subject to the terms of this Order.  In the event that Outside Counsel maintains such documents, it shall not disclose material containing any type of PROTECTED INFORMATION to another party absent subpoena or court order.  Upon receipt of any subpoena for such information, the Party receiving

25

the subpoena shall immediately notify Outside Counsel for the producing Party of the subpoena

so that the latter may protect its interests.

### 32. *Survival of Terms of this Order*

The provisions of the Order shall survive the final termination of the Action for any

retained information, documents and contents thereof.

### 33. *New Parties*

In the event that a new Party is added or substituted, this Order will be binding on the

new Party, subject to the right of the new Party to seek relief from the Court for modification of

this Protective Order.

**AGREED TO:**

DATED: _____, 2016

MCCARTER & ENGLISH, L.L.P.

YOUNG CONAWAY STARGATT & TAYLOR, L.L.P.

_____

Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Attorneys for Plaintiffs AstraZeneca AB,
AstraZeneca Pharmaceuticals LP,
AstraZeneca UK Limited, and AstraZeneca
LP*

_____

James M. Lennon (No. 4570)
Gregory J. Brodzik (No. 5722)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jlennon@ycst.com
gbrodzik@ycst.com

*Attorneys for Defendant Mylan
Pharmaceuticals Inc.*

CAESAR RIVISE, P.C.

_____
R Touhey Myer (#5939)
800 N. King Street – Suite 304
Wilmington, DE 19801
Tel: (302) 544-9100
tmyer@crbcp.com

*Attorneys for Defendants*
*InvaGen Pharmaceuticals, Inc. and*
*Sigmapharm Laboratories, LLC*


BAYARD, P.A.

_____
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Defendants HEC Pharm Co.,*
*Ltd. and HEC Pharm USA, Inc.*


YOUNG CONAWAY STARGATT & TAYLOR
L.L.P.

_____
Karen L. Pascale (#2903)
Anne Shea Gaza (#4093)
Robert M. Vrana (# 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
kpascale@ycst.com
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendants Amneal*
*Pharmaceuticals  LLC, and Amneal*
*Pharmaceuticals of New York,*
*LLC*


RICHARDS, LAYTON & FINGER, P.A.

_____
Kelly E. Farnan (#4395)
Christine Dealey Haynes
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
302-651-7700
Farnan@rlf.com
Haynes@rlf.com

*Attorneys for Defendant Prinston*
*Pharmaceutical Inc.*

COZEN O'CONNOR P.C.                         POTTER ANDERSON & CORROON LLP

_____                    David E.Moore (#3983)
Joseph J. Bellew (#4816)                    Bindu A. Palapura (#5370)
1201 N. Market Street, Suite 1001           Stephanie E. O'Byrne (#4446)
Wilmington, DE 19801                        Hercules Plaza, 6th Floor
Tel: (302) 295-2025                         1313 N. Market Street
Fax: (215) 701-2431                         Wilmington, DE 19801
jbellew@cozen.com                           Tel: (302) 984-6000
                                            dmoore@potteranderson.com
*Attorneys for Defendants*                  bpalapura@potteranderson.com
*Apotex Inc. and Apotex Corp.*              sobyrne@potteranderson.com

                                            *Attorneys for Defendant Watson Laboratories, Inc.*

SO ORDERED THIS ___25th___ DAY OF _April 2016_

_____
UNITED STATES DISTRICT COURT JUDGE

29

## EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASTRAZENECA LP, ASTRAZENECA AB,<br>ASTRAZENECA UK LIMITED, and<br>ASTRAZENECA PHARMACEUTICALS LP,<br><br>     Plaintiffs,<br><br>     v.<br><br>MYLAN PHARMACEUTICALS INC.,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.: 15-1000-RGA<br>)   (CONSOLIDATED)<br>)<br>)<br>)<br>)<br>) |

### "EXHIBIT A" TO STIPULATED PROTECTIVE ORDER

## I.   DECLARATION OF ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I, _____, declare under penalty of perjury under

the laws of the United States that:

1.   My present employer is _____ and its address

is _____.

2.   My present occupation or job description is _____.

3.   I hereby certify that I have read and understand the terms of the Stipulated

Protective Order ("Protective Order") among the parties in consolidated C.A. No. 15-1000-RGA.

4.   I agree that I will not use, disclose, or allow to be disclosed to anyone not

expressly permitted by the Protective Order to receive PROTECTED INFORMATION, any of

the contents of PROTECTED INFORMATION received under protection of the Protective

Order. I also agree to be bound by the terms and conditions of the Protective Order.

30

5.      I agree that, as to all individuals not expressly permitted to receive PROTECTED

INFORMATION, I am to keep confidential all copies of any materials that I receive, whether at

home or at work, which have been designated as PROTECTED INFORMATION.  I also agree

that I will carefully maintain such materials in a container, drawer, room, or other safe place in a

manner consistent with the Protective Order, and that I will return or destroy such materials in a

manner consistent with the Protective Order.  I acknowledge that such return or the subsequent

destruction of such materials shall not relieve me from any of the continuing obligations imposed

upon me by the Protective Order.

6.      For the purpose of enforcement of the Protective Order, I hereby submit to the

jurisdiction of United States District Court for the District of Delaware.

DATED: _____        _____

(Signature)

_____

(Printed Name)

31

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUPERNUS PHARMACEUTICALS, INC., Plaintiff, v. ACTAVIS, INC., et als., Defendants. | Civil Action 2:14-CV-06102-SDW-SCM **ORDER ON DCO DISPUTE** |
| SUPERNUS PHARMACEUTICALS, INC., Plaintiff, v. ZYDUS PHARMACEUTICAL COMPANIES, INC., et als., Defendants. | Civil Action 2:14-CV-7272-SDW-SCM |
| SUPERNUS PHARMACEUTICALS, INC. Plaintiff, v. PAR PHARMACEUTICALS, Defendants. | Civil Action 2:15-CV-0326-SDW-SCM |

**THIS MATTER** having come before the Court on the parties' dispute regarding the scope and language of the proposed Discovery Confidentiality Order ("DCO"). The parties are seeking the entry of a DCO, but cannot agree on its terms. The parties have elected not to use the form DCO within Appendix S to the Local Civil Rules. This dispute and the parties involved are nearly identical to the questions raised and decided in this District in *Supernus v Actavis*, et al., Civil No. 1:13-4740-RMB-JS, 2014 WL 654594 (D.N.J. Feb. 20, 2014). The reasoning in that case is equally applicable here.

**IT IS** on this Wednesday, September 23, 2015 ordered as follows:

1.   <u>DCO General Access</u>:  There shall be two tiers of confidential information.

   a)   With regard to 'Highly Confidential' information, the DCO shall track the language proposed by defendants Par and Actavis;

   b)   With regard to 'Confidential' information, the DCO shall permit access to two in-house designees, attorneys or legal personnel.

   Any designated in-house attorneys must obviously be divorced from any "competitive decision making" for their client. See *U.S. Steel v. United States*, 730 F.2d 1465, 1468 (Fed.Cir. 1984). Named designees and legal personnel are likewise subject to the balancing test used by this District when granting or denying a motion for a protective order. See, e.g. *Supernus Pharmaceuticals, Inc., v. Activas Inc.*, et al., No. 13-4740, at 12 (D.N.J. Sept. 15, 2014)(entering a protective order because "a material risk" that parties' "confidential information may be misused" by in-house, non-attorney Dr. Vieira). The parties will be subject to ¶ 9 of the proposed DCO. (D.E. 62 at 21, No. 14-6102; D.E. 49 at 21, No. 14-7272; D.E. 48 at 21, No 15-326).

2.   <u>DCO Cross-Party Access</u>:  As to ¶ 7, the DCO shall track defendants' proposal. (D.E. 62 at 21, No. 14-6102; D.E. 49 at 21, No. 14-7272; D.E. 48 at 21, No 15-326). The Court sees efficiency in permitting each Defendant control over the disclosure of its confidential information to its direct competitors without unduly interfering with Plaintiffs ability to prosecute its case. See *Prism Technologies, LLC v. AT&T Mobility, LLC*, No. 12-122, 2013 WL 100390, at *3 (D. Neb. Jan. 8, 2013).  Plaintiff is reminded that this compromise promotes efficiency by requiring dialog between the parties without directly resorting to Rule 45.

3.   As to ¶8, the DCO shall track Defendants' Par and Actavis proposal. (D.E. 62 at 21, No. 14-6102; D.E. 49 at 21, No. 14-7272; D.E. 48 at 21, No 15-326). Again, designated in-house counsel shall not be involved in "competitive decision making" for their respective client. U.S. Steel, 730 F.2d at 1468.

4.   <u>Patent Prosecution Bar</u>:  Denied without prejudice as premature.  See *Supernus v Actavis*, et al., Civil No. 1:13-4740-RMB-JS, 2014 WL 654594 (D.N.J.  Feb. 20, 2014).

**FAILURE TO COMPLY WITH THE TERMS OF THIS ORDER OR ANY SUBSEQUENT SCHEDULING ORDERS ENTERED BY THIS COURT MAY**

**RESULT IN SANCTIONS. See Fed.R.Civ.P. 16(f) and 37.**



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

9/23/2015 5:12:34 PM

Original: Clerk of the Court
Hon. Susan D. Wigenton, U.S.D.J.
cc: All parties
    File

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XPOINT TECHNOLOGIES, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | 09-cv-00026-SLR |
| | : | |
| INTEL CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | February 22, 2010 |
| | : | |

## SPECIAL MASTER ORDER NO. 3

## Subject:  Discovery Matter – 102  (DM102)

## Dispute Regarding Paragraph J and 9(b) of a Proposed Protective Order

Parties to the Dispute:

    Plaintiff and all defendants.

    The parties have submitted to the Special Master (SM) a dispute regarding <u>J – In-House Litigation Counsel</u> and <u>9(b) Additional Restrictions on Access to Code</u>.

## Discussion

## J- In-House Litigation Counsel

## The dispute here involves the underlined portion in this provision.

"In-House Litigation Counsel": any attorney (or, <u>in the case of a non-U.S. defendant</u>, an in-house person having oversight responsibility for the litigation) who is an employee in the legal department /intellectual property department of a Party and whose responsibilities are to manage or oversee litigation and who does not engage in competitive decision-making (and his or her support staff such as paralegals and administrative assistants), and who shall not from the date of entry of this Protective Order through a period of (1) year following the final conclusion of this action be engaged in: (i) the review of, participation in or approval of pricing, sales or marketing programs of data backup or restore product design or manufacture, (ii) the filing or prosecution of any patent applications having any claims directed to backup or restore software marks, or (iii) the review or negotiation of any contract with a Producing Party related to data backup or restore.

It is the plaintiff's view that it has no objection to in-house counsel being a person who is not an attorney, if the other qualifications of

Paragraph J are satisfied. It does object to limiting such non-attorneys to non-U.S. defendants. Defendants contend that, in many foreign countries, such as Japan, it is rare or non-existent for in-house legal department to have any bar-qualified lawyers. They add that plaintiff is based in the United States and has made no justification as to why it should be permitted, under the U.S. legal system, to name as "In-House Litigation Counsel" – with access to attorney's eyes only materials to someone who is not a lawyer. Defendants' letter brief also points out that the defendants want to ensure that any individual who is designated as In-House Litigation Counsel is a member of a Bar in the United States, and therefore subject to the ethical, moral and legal restrictions and obligations that coincide with membership as an attorney, as well as being an officer of the court, subject to the court's rules. They argue in their letter that the need to restrict those designated as In-House Litigation Counsel to attorneys is implicit in the designation itself.

Defendants seem to be arguing that although the ideal circumstance would be for In-House Litigation Counsel to be an attorney, who is a member of a Bar of a court located in the United

3

States, certain defendants cannot satisfy this qualification, for their in-house counsel.  Defendants cite Japan as a foreign country that does not use attorneys in their legal departments that are Bar-qualified lawyers. This is the reason why defendants want the phrase ". . . or, in the case of a non-U.S. defendant . . ." added to the stipulation which would allow a non-attorney to be designated as In-House Litigation Counsel. Defendants are also troubled by what they perceive to be plaintiff, a U.S. entity, intending to designate a non-lawyer Frank Wang, plaintiff's CEO and sole employee as its in-house counsel.  Defendants point out that Mr. Wang is not only the named inventor on the patents-in-suit, but he is also a named inventor in pending patent applications, and CEO of a company with a strategy to license intellectual property. Defendants are willing for plaintiff in their words to have "any other employee of plaintiff to be designated as In-House Litigation Counsel, except Mr. Wang."

In-House Litigation Counsel, under the definition of Paragraph J, must satisfy a somewhat hefty list of qualifications.  First, the person must be an employee in the legal department/intellectual property department of a party.  The responsibilities of this person must be to

either manage or oversee litigation.  To manage is to direct or administer the affairs of an organization or business, and to oversee is to watch over and direct; to supervise.  (*See* New College Edition of the American Heritage Dictionary of the English Language (1976)).  This person is not to engage in competitive decision-making.  This role would also include functions of those persons who are being directed or supervised by the person designated, including support staff such as paralegals and administrative assistants.  Paragraph J provides restrictions for a period of one-year following the final conclusion of the litigation, where the person cannot be engaged in (i) the review of, participation in or approval of pricing, sales or marketing programs of data backup or restore product design or manufacture, (ii) the filing or prosecution of any patent applications having any claims directed to backup or restore software or trademark applications directed to backup or restore software marks, or (iii) the review or negotiations of any contract with a Producing Party related to backup data or restore.

While Paragraph J does not state further details of the responsibility of In-House Litigation Counsel to the court, that non-lawyer, whether it be on behalf of a defendant or the plaintiff in the

important role of In-House Litigation Counsel will be responsible on behalf of his or her employer party to be familiar with the rules of court and the court's orders that effect that party in the litigation, and specifically that govern the conduct of the In-House Litigation Counsel and his or her support staff that touch upon the litigation.

If any non-U.S. defendant can make the designation of a non-attorney as required by the obligations, qualifications, and restrictions in Paragraph J, I do not see why Xpoint cannot do the same and include Mr. Wang as a candidate to serve as a non-attorney In-House Litigation Counsel for Xpoint Technologies, Inc. [1]

For the foregoing reasons, the SM concludes that the plaintiff's version of the disputed portion of Paragraph J should be included in the proposed stipulation, together with certain additions as follows:

*Blacks' Law Dictionary, 7th Edition (1999)* defines "in-house counsel" as one or more lawyers employed by a company also termed "in-house" (quotations added). A non-attorney designee for this post cannot be designated as "counsel" for the simple reason that it is not the truth. If that is not enough reason to change the designation under

---

[1] Neither party can truly satisfy the definition but designating a non-attorney because that in itself conflicts with the title "In-House Litigation Counsel." which is addressed infra.

623768-1

Paragraph J of the Stipulation, the fact that it is unseemly for one who is not an attorney to hold him or herself out with the counsel moniker should be enough.  The SM therefore directs counsel to agree on a different title for the position of In-House Litigation Counsel if a non-attorney is named.  Litigation Manager or Director of Litigation or a similar title that denotes the high-level authority this person will occupy are examples to consider.

Section (d) of Paragraph 8 and the subsections under (d) should make reference to the new title for the non-attorney designee for in-house litigation counsel and the party can strike out the one that does not apply in completing its subsection of Section 8.  Also, the last paragraph of section 8 making reference to "Toshiba In-House Litigation Counsel" may have to be changed if Toshiba is a party who will select a non-attorney for that role.  Paragraph 13 also requires the addition of the new label for a non-attorney for the In-House Litigation Counsel position.  There may be other changes counsel may agree to make.

<u>Responsibilities of the Court</u>.

A party to a case such as this is responsible to the court to comply with the rules, standards and orders that are issued from time to time. They do this through their agents, employees and with the help of their in-house counsel and outside counsel of record.  Here, plaintiff and every defendant who designates a non-attorney as its In-House Litigation Counsel should understand that their designee will be held to the same level of compliance to the court's rules, standards and orders as those who are licensed attorneys.  This responsibility will require the parties' choice to understand and obey rules, standards and the court's orders governing discovery requirements and obligations due their adversaries.  These will include the duty to identify, locate, preserve and produce factual material deemed discoverable and to be produced at the time, the place, and the form required by the rules and the court's orders.  Defendants should have their legitimate concerns regarding Mr. Wang's possible appointment by Plaintiff under Paragraph J satisfied by restrictions imposed upon those appointed, including the signing of the confidentiality agreement attached as Exhibit A under Paragraph 7(d) of the Protective Order.

623768-1

The SM believes that the performance of non-attorneys to the In-House Litigation Counsel position will require increased vigilance by outside counsel at least on the discovery phase of the case.

### 9(b)  Additional Restrictions on Access to Code

Once again, this dispute centers around a topic that the court has approached for parties in dispute with a default standard for the parties to follow.  The central dispute is that the plaintiff wants the stand-alone computer to include development environment and software utilities as used in the provider's ordinary course of business, and the defendants prefer to have the option to include software utilities.  The plaintiff argues that defendants have refused to include the development environment for their source code production.  Plaintiff quarrels with other features of defendants' version that plaintiff contends would hinder the ability of plaintiff's counsel and experts to analyze the source code.

Defendants' argue that the plaintiff's suggestions respecting the furnishing of software tools will be very costly for the defendants easily in the hundreds of thousands of dollars, including requiring the assembly of multiple separate networks.

9

As in the case in dispute over format, everyone recognizes there will be expense and indeed considerable expense in the pretrial development of readying this litigation for presentation to a jury, which all parties have demanded.  No doubt the inquiry into source code respecting the allegations of plaintiff against the 19 defendants made up of the 13 defendant groups will incur burden and costs on all parties. A reading of the court's default standard makes it plain that the court understood that costs would be incurred by all parties in the development of this important issue of source code that is entangled in the issues and defenses included in the pleadings of all the parties.  The crucial point is that the parties are in disagreement, and the court has adopted a default standard when the parties are in disagreement.

The parties have all expressed in their presentation to the SM their willingness to meet and confer to resolve difficult conditions that may be confronting particular parties by reason of the obligations impressed upon them by discovery needs and requirements either requested by other parties or required by the court.  All of these arrows point to the solution in regard to this dispute being the default standard for access to source code adopted by the court.

10

For this reason, the SM determines that the default standard will apply to Section 9(b) of its protective order under <u>Additional Restrictions to an Access to Code</u>.

## ORDER

Based upon the authority provided to the special master by the court in its order of December 9, 2009, the Special Master rules on the discovery matter designated as DM 102 regarding Paragraph J and 9(b) of a proposed protective order as follows:

1. The parties may pick the person of their choice, to manage, direct and supervise the in-house litigation activities of the party for this case, but that person can only be designated "In-House Litigation Counsel" if that person is an attorney. If the person is not an attorney, their designation on the records of this case should be as descriptive of their duties, but not as an attorney or counsel.

11

2.     The current standard of the court "Default Standard for Access to Source Code" shall apply to the obligation of the parties in dispute under Section 9(b) of the proposed Stipulation.



SO ORDERED:

LOUIS C. BECHTLE,
Special Master

**EXHIBIT 5**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

**JANSSEN PRODUCTS, L.P., et al.,**

        Plaintiffs,

        v.

**EVENUS PHARMACUTICALS LABORATIRES INC., et al.,**

        Defendants.

---

Civil Action No. 20-9369 (FLW) (ZNQ)

**ORDER**

This matter comes before the Court upon Plaintiffs Janssen Products, L.P.'s and Pharma Mar, S.A.'s (collectively as "Plaintiffs") Letter Request. (Pls.' Dec. 8, 2020 Letter ("Pls.' Letter Request"), ECF No. 49.) Plaintiffs seek an order approving their version of the Discovery Confidentiality Order ("DCO"), which all Defendants ("other Defendants") have consented to, except Defendants Sun Pharmaceutical Industries Ltd., Sun Pharmaceutical Industries Inc. (collectively as, "Sun"), and Natco Pharma Ltd. ("Natco") (collectively as "Defendants"). (Pls.'s Dec. 8, 2020 Letter at 1.) Defendants Sun and Natco opposed Plaintiffs' version of the DCO. (Defs.' Dec. 10, 2020 Letter ("Defs.' Opp'n"), ECF No. 50.) Following a telephonic status call with the Court on December 29, 2020, both parties submitted supplemental briefings to the Court. (*See* Pls.' Jan. 7, 2021 Letter, ECF No. 64; *see also* Defs.' Jan. 8, 2021 Letter, ECF No. 65.) For the reasons stated below, Plaintiffs' Letter Request is granted in part and denied in part.

## I.      BACKGROUND

Plaintiffs filed a four-count complaint against Defendants alleging patent infringement. (Compl. ¶¶ 144-179, ECF No. 1.) Plaintiffs' claims stem from Defendants' alleged infringement of two of Plaintiffs' patents, Patents '557 and '051. (*Id.*) Because of the nature of the suit, the parties agreed to enter a DCO with the Court. However, the parties now disagree on three elements

of the DCO. (*See generally* Pls.' Letter Request; Defs.' Opp'n.) The parties disagree on: (1) whether non-lawyer in-house legal personnel may access information subject to the DCO; (2) whether a two-tier system of confidentiality is necessary, one accessible by in-house counsel and the other not accessible by in-house counsel; and (3) whether Plaintiffs may share Sun's and Natco's confidential information with outside counsel and experts for the other Defendants. (Pls.' Letter Request at 1; Defs.' Opp'n at 1.)

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) permits "[a] party or any person from whom discovery is sought . . . [to] move for a protective order." "The test used to determine whether a confidentiality order should be entered requires '[the] party seeking...[the] order...[to] demonstrate that 'good cause' exists for the protection of...[certain discovery] material.'" *Eisai Inc. v. Sanofi-Aventis U.S., LLC,* No. 08-4168, 2012 U.S. Dist. LEXIS 52887, at*19 (D.N.J. Apr. 16, 2012) (citations omitted). "Good cause" exists when the moving party "specifically demonstrate[s] that disclosure will cause a clearly defined and serious injury although [b]road allegations of harm, unsubstantiated by specific examples, ... will not suffice." *Id.* at 20. (citations omitted). "The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order." *Id.* at 21.

## III.     ANALYSIS
### a.  Access for non-lawyer in-house legal personnel

Plaintiffs argue that because Sun and Natco have in-house counsel they should not be allowed to give access to confidential information to non-lawyer in-house personnel. (Pls.' Letter Request at 3.) Furthermore, Plaintiffs argue that there is significant risk in providing non-lawyers access to confidential information because they are not subject to the same professional and ethical responsibilities or subject to sanctions. (*Id.*) Defendants argue that as foreign corporations, their

in-house legal departments are made up primarily of non-lawyers who handle the day-to-day matters of this type of litigation. (Defs.' Opp'n at 2.) Defendants also argue that Plaintiffs' concerns about giving access to non-lawyers because they are not subject to the same professional and ethical rules is unfounded without specific examples of the alleged harm and does not satisfy the good cause requirement. (*Id.* at 3.) Lastly, Defendants argue that the DCO contains safeguards to prevent non-attorneys from disclosing or misusing confidential information, such as signing the Acknowledgment. (*Id.*)

Plaintiffs have agreed to allow one non-attorney in-house person to be designated to receive and have access to confidential information. (Pls.' Jan. 7, 2021 Letter at 2.) Thus, the remaining discrepancy on this issue is whether Defendants Sun and Natco may designate more than one non-attorney to access confidential information. A showing of "good cause" must be supported by a clearly defined and serious injury, which must be more than broad allegations of harm unsupported by specific examples. *Eisai Inc.,* 2012 U.S. Dist. LEXIS 52887, at*20. Here, Plaintiffs have only presented to the Court a general risk of disclosing confidential information to non-attorneys. However, as Defendants note, the DCO provides for safeguards such as signing the Acknowledgment and giving the Court the power to sanction the Party, even if the non-attorney may not be subject directly to sanctions. Without specific allegations of a clearly defined or serious injury that would result from disclosure to non-attorney in-house legal personnel, the Court finds that Plaintiffs have not met their burden of showing good cause exists to prevent Defendants from designating more than one non-attorney to have access to confidential information. Thus, Defendants may designate more than one non-attorney in-house legal personnel to have access to confidential information subject to the DCO.

**b.   Two-tier system of confidentiality and access to in-house counsel**

Plaintiffs argue that their in-house counsel should be permitted access to all confidential information shared by Defendants, specifically, "Defendants' ANDAs, Drug Master Files ("DMFs") and related FDA correspondence or filings." (Pls.' Letter Request at 2.) Plaintiffs argue that without this information, in-house counsel will not be able to effectively manage this case and know which claims to assert. (*Id.*) Furthermore, Plaintiffs assert that in-house counsel are subject to the same professional and ethical duties as outside counsel thus, there is minimal risk in providing in-house counsel with confidential information. (*Id.*) Defendants argue for a two-tier system of confidentiality: "Confidential" and "Highly Confidential". (Defs.' Opp'n at 4.) Defendants argue that, consistent with Local Patent Rule 2.2 and this District's template DCO in Appendix S of the District of New Jersey's Local Rules, the two-tier system will distinguish between information marked "Confidential," which may be accessed by both outside counsel and in-house counsel, and information marked "Highly Confidential," which may only be accessed by outside counsel. (*Id.*) Defendants argue this two-tier system is necessary to avoid the significant risk of competitors gaining access to "Highly Confidential" information including, trade secrets. (*Id.* at 5.)

Defendants have not met their burden of showing good cause exists to prevent Plaintiffs' in-house attorneys from having access to "Highly Confidential" information. As the Court noted above, and as Plaintiff notes, in-house attorneys are subject to the same professional and ethical duties and sanctions as outside counsel. Furthermore, the DCO also allows for other safeguards: "[I]n-house attorney designees are identified before any confidential information is disclosed, barred from engaging in certain activities and required to sign an acknowledgment agreeing to be bound by the DCO." (Pls.' Letter Request at 2.) Therefore, the Court finds that Plaintiffs' in-house counsel may have access to the same confidential information as outside counsel.

### c.  Sharing Sun's and Natco's confidential information with outside counsel and experts for other Defendants

Plaintiffs argue that limited cross-disclosure of Sun's and Natco's confidential information to the other Defendants' outside counsel and experts should be allowed "given the number of parties, and overlapping issues in this single action." (Pls.'s Letter Request at 4.) Plaintiffs also assert that cross-disclosure will "aid in the orderly administration and handling of the case" and prevents an "unnecessary administrative burden on Plaintiffs and the Court." (*Id.* at 5-6.) Defendants argue that cross-disclosure of Defendants' confidential information is prejudicial to Defendants because it means the Plaintiff has complete control over what information Defendants obtain from the other Defendants and Defendants will not have an opportunity to challenge information received from another Defendant that is used against them. (Defs.' Opp'n at 6-7.) Furthermore, Defendants argue that Plaintiffs' claims of convenience to them and to the Court are "eclipsed by the inherent danger in disclosing this information to additional parties." (*Id.* at 7.)

The Court finds that Defendants have not met their burden to show good cause exists to prevent limited cross-disclosure to the other Defendants' outside counsel and experts because the disclosures are limited and not going to in-house counsel or employees of the other defendants. Additionally, Defendants have not shown a specific clearly defined or serious injury that would result from such limited disclosure. Furthermore, the Court notes Defendants' concern over the inability to "effectively investigate, respond to, or cross examine any confidential material of another defendant used against them by Plaintiffs." (Defs.' Opp'n at 6.) However, the Court finds this concern is mitigated by Federal Rule of Civil Procedure 26(b)(1)'s broad scope of discovery. Defendants may seek discovery of "any non-privileged matter that is relevant to [it's] claim or defense and proportional to the needs of the case." Therefore, Plaintiff may cross-disclose confidential information of one defendant to outside counsel or an expert of another defendant.

IV.     **CONCLUSION**

For the reasons stated above, and for other good cause shown,

**IT IS** on this 28th day of January, 2021 **ORDERED** that:

1.  Plaintiff's Letter Request (ECF No. 49) is hereby **GRANTED in part** and **DENIED in part**.

2.  Defendants may designate more than one non-attorney in-house legal personnel to receive and have access to confidential information that is the subject to the DCO**.**

3.  Plaintiffs' in-house counsel will have access to the same confidential information as outside counsel.

4.  Plaintiffs may cross-disclose confidential information of one Defendant to another Defendant's outside counsel or expert.

5.  The parties must submit a revised DCO consistent with this Order within seven (7) days of entry of this Order.

s/ Zahid N. Quraishi
_____
**ZAHID N. QURAISHI**
**UNITED STATES MAGISTRATE JUDGE**