IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARMONY BIOSCIENCES, LLC, BIOPROJECT SOCIÉTÉ CIVILE DE RECHERCHE and BIOPROJECT PHARMA SAS, <br><br> Plaintiffs, <br><br> v. <br><br> LUPIN LIMITED, *et al.*, <br><br> Defendants. | Civil Action No. 23-1286-JLH-SRF |

## MEMORANDUM ORDER

At Wilmington this **2nd** day of **December, 2025**, the court having considered the parties' discovery dispute letter submissions and associated filings (D.I. 376; D.I. 381; D.I. 382; D.I. 383; D.I. 386; D.I. 397; D.I. 400; D.I. 401), IT IS ORDERED that Plaintiffs' motion for a protective order prohibiting the deposition of Dr. David Engers, which was raised in the pending motion for teleconference, (D.I. 359), is GRANTED for the reasons set forth below:

1. **Background.** On July 15, 2024, the court entered a protective order governing access to the parties' confidential information in this patent infringement case. (D.I. 81) Paragraph 6(h) of the protective order permits the disclosure of confidential information to "any independent expert or consultant (along with their staff and other individuals working on this Litigation at their direction or under their supervision whose duties or responsibilities require access to Confidential Information under this Protective Order)" subject to the procedures set forth in paragraph 17 of the protective order. (*Id.* at ¶ 6(h)) Paragraph 17 provides that "[c]ounsel desiring to disclose Confidential Information to an independent expert or consultant according to Paragraph 6(h) shall first obtain a signed declaration . . . from that person" at least

five business days in advance of the first proposed disclosure of confidential information to that person, giving the opposing party time to object to the proposed disclosure. (*Id.* at ¶ 17)

**2.** On July 1, 2025, Plaintiffs served on defendants AET Pharma US, Inc. ("AET"), MSN Pharmaceuticals Inc., MSN Laboratories Private Limited, Novitium Pharma LLC, and Hikma Pharmaceuticals USA Inc. (collectively, "Defendants"), Dr. Robert Wenslow's opening expert report[1] and a chain-of-custody declaration by Dr. Engers. (D.I. 330) The declaration of Dr. Engers indicated that certain samples of Defendants' ANDA products were sent to Dr. Michael Hanrahan of Kansas Analytical Services ("KAS") on specified dates. (D.I. 376, Ex. 1 at ¶¶ 42-45)

**3.** There is no dispute that Plaintiffs did not disclose Dr. Hanrahan or KAS in accordance with the procedures set forth at paragraph 17 of the protective order. When AET expressed concern that a KAS analyst's access to the confidential ANDA product samples may have violated paragraph 17 of the protective order, Plaintiffs responded that they were not required to disclose the KAS analyst because he worked under the direction and supervision of Dr. Wenslow pursuant to paragraph 6(h) of the protective order. (D.I. 381, Ex. 1 at 4-5) AET asked Plaintiffs "to confirm whether KAS has agreed to be bound by the Protective Order in this case, and if and when KAS signed the undertaking[.]" (*Id.*, Ex. 1 at 3) Plaintiffs declined to ask individuals at KAS to execute the undertaking and instead represented in an email that the analyst at KAS "treated the samples and information received about the samples as confidential[.]" (*Id.*, Ex. 1 at 2)

---

[1] Neither party included any excerpts of Dr. Wenslow's opening expert report among the exhibits associated with the pending motion for a protective order.

4. In subsequent exchanges, AET sought the deposition of Dr. Engers based on his handling of Defendants' ANDA product samples. (D.I. 381, Ex. 2 at 6) Plaintiffs offered a supplemental declaration from Dr. Engers in lieu of the deposition. (*Id.*, Ex. 2 at 2) AET refused the offer of a supplemental declaration and declined to provide information about the information sought in the deposition of Dr. Engers. (*Id.*) The parties then brought the dispute to the court. (D.I. 359)

5. The parties exchanged emails over the course of several months leading up to this dispute which focused on whether the disclosures of Defendants' confidential ANDA samples complied with the protective order. (D.I. 381, Exs. 1-2) But Plaintiffs' original letter submission does not mention KAS or Dr. Hanrahan. (D.I. 376) In a footnote, Plaintiffs state in conclusory fashion that they have complied with the protective order. (*Id.* at 1 n.2)

6. On November 3, 2025, the court entered an oral order granting Plaintiffs leave to file a reply submission addressing their position on the disclosures required by paragraphs 6(h) and 17 of the protective order, and granting AET leave to file a sur-reply submission regarding same. (D.I. 393) The court stated that it "will not entertain any disputes, including privilege disputes, beyond the narrow issue identified in this Oral Order." (*Id.*) Plaintiffs' reply complies with the oral order. AET's sur-reply raises a new issue about whether Dr. Wenslow's communications with Dr. Hanrahan are protected by the attorney client and/or work product privilege, and it includes more than fifty pages of exhibits. (D.I. 400; D.I. 401)

7. **Legal standard.** A motion for a protective order is governed by Federal Rule of Civil Procedure 26(c), which provides that "for good cause," the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). The party moving for the protective order bears the burden of

3

persuasion. To satisfy this burden, the movant must show good cause by demonstrating with specificity a particular need for protection and that absent the protective order, the movant will suffer a "clearly defined and serious injury." *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (internal quotation marks and citations omitted); *see also AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, C.A. No. 17-1065-MSG, 2018 WL 2337133, at *1 (D. Del. May 23, 2018).

**8. Analysis.** AET seeks to depose Dr. Engers on "the who/what/when facts" of what he did with Defendants' remaining ANDA product samples and whether those samples were sent to undisclosed individuals or entities. (D.I. 381 at 1-2) According to Plaintiffs, this would require the disclosure of samples shipped to certain consulting experts in violation of Rule 26(b)(4)(D)'s prohibition against "interrogatories or deposition [to] discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." (D.I. 376 at 1-2); Fed. R. Civ. P. 26(b)(4)(D). Plaintiffs maintain that they identified all consulting experts in accordance with paragraph 17 of the protective order, but disclosure of additional information regarding which samples were received by a particular consultant and when those samples were sent would violate the work product doctrine. (D.I. 397 at 2)

**9.** Plaintiffs have shown good cause for the entry of a protective order to preclude the deposition of Dr. Engers. Although the protective order requires Plaintiffs to disclose the identities of non-testifying experts receiving Defendants' confidential information, it does not require Plaintiffs to identify the particular samples or other confidential information sent to a certain expert or consultant. (D.I. 81 at ¶ 17) Such information falls within the scope of discovery precluded under Rule 26(b)(4)(D), and AET has not shown the existence of exceptional circumstances under which it is impracticable to obtain the information by other

means pursuant to Rule 26(b)(4)(D)(ii). For example, AET does not address its rejection of Plaintiffs' offer to provide additional information "in a supplemental declaration from Dr. Engers[.]" (D.I. 376, Ex. 3 at 1-2; D.I. 381 at 2)

**10.** In addition, Plaintiffs have met their burden to demonstrate the applicability of the work product protection. *See Memory Bowl v. N. Pointe Ins. Co.*, 280 F.R.D. 181, 185 (D.N.J. 2012). The identification of specific protected material that was sent to a particular expert may reveal aspects of Plaintiffs' litigation strategy or mental impressions. *See Boston Sci. Corp. v. Edwards Lifesciences Corp.*, C.A. No. 16-275-SLR-SRF, 2016 WL 7440473, at *2 (D. Del. Dec. 27, 2016). The applicability of the work product doctrine is sufficient to establish good cause for a protective order under Rule 26(c). *See Fidelity & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 522 (E.D. Pa. 1996) (finding that "the attorney-client privilege provides sufficient 'good cause' under Rule 26(c) to grant the protective order[.]").

**11.** The court is not persuaded by AET's position that a deposition of Dr. Engers is necessary to determine whether Plaintiffs violated the protective order. The origins of this dispute can be traced to the July 1, 2025 disclosures in Dr. Wenslow's expert report and Dr. Engers's declaration which identified ANDA product sample testing performed by Dr. Hanrahan at KAS. (D.I. 330; D.I. 376, Ex. 1 at ¶¶ 42-45; D.I. 381, Ex. 1) AET expressed concern that Plaintiffs violated the terms of the operative protective order by providing Defendants' ANDA product samples to Dr. Hanrahan at KAS without first disclosing Dr. Hanrahan in compliance with the procedures at paragraph 17 of the protective order. (D.I. 381, Ex. 1) The court is unpersuaded that a deposition of Dr. Engers would address AET's concerns about the disclosure made to Dr. Hanrahan and KAS because the details of that disclosure are included in Dr. Engers' declaration. (D.I. 376, Ex. 1 at ¶¶ 42-45)

**12.** Moreover, AET's concerns about broader protective order violations are speculative. There is no evidence on this record warranting a deposition of Dr. Engers on whether he withheld information regarding the identities of other sample recipients in violation of the protective order or that ANDA samples were sent to undisclosed recipients falling outside the scope of the carveout at paragraph 6(h). (D.I. 376, Ex. 1 at ¶¶ 42-45) Plaintiffs offered to provide AET with a supplemental declaration from Dr. Engers if AET could specify the topics and issues it sought to address, but AET declined Plaintiffs' offer. (D.I. 376, Ex. 3 at 2) The court declines to fill in the gaps on AET's behalf by ordering relief that AET chose not to accept. If it is later revealed that Dr. Engers sent samples to unidentified individuals in violation of the protective order, Plaintiffs bear the risk of nondisclosure and Defendants may seek appropriate relief.

**13.** Nonetheless, AET is reasonably concerned that Plaintiffs' disclosure of ANDA product samples to Dr. Hanrahan and KAS may fall outside the scope of the carveout in paragraph 6(h) of the protective order. (D.I. 81 at ¶ 6(h); D.I. 381, Ex. 1 at 3) In a conclusory footnote, Plaintiffs maintain that they were not required to disclose Dr. Hanrahan or KAS under paragraph 17 of the protective order because he worked under the direction and supervision of Dr. Wenslow in accordance with paragraph 6(h) of the protective order. (D.I. 397 at 2 n.1) But there is no indication on this record that Dr. Wenslow was associated with KAS or that Dr. Hanrahan was a member of Dr. Wenslow's staff, and it is not clear how much oversight Dr. Wenslow exercised over Dr. Hanrahan and/or KAS regarding use of the samples. As in *Oleksy v. General Electric Company*, this appears to be "an instance where a party failed to disclose individuals working for a separate company and who, for the most part, could qualify as experts

or consultants under the protective order in this case in their own right." 2014 WL 3820352, at *6 (N.D. Ill. Aug. 1, 2014).

**14.** To remedy this omission without prejudicing AET for a disclosure that was already made, IT IS ORDERED that, on or before December 5, 2025, Plaintiffs shall provide AET with the Agreement to be Bound by Protective Order signed by Dr. Hanrahan. (D.I. 81, Ex. A); *Oleksy*, 2014 WL 3820352, at *6 (determining that the plaintiff sufficiently remedied any protective order violation by disclosing the individuals who received confidential information and providing the defendant with signed undertakings for each of those individuals after the disclosures were made).

**15. Conclusion.** For the foregoing reasons, IT IS ORDERED that Plaintiffs' motion for a protective order prohibiting AET from deposing Dr. Engers is GRANTED. IT IS FURTHER ORDERED that, on or before December 5, 2025, Plaintiffs shall provide AET with the Agreement to be Bound by Protective Order signed by Dr. Hanrahan. (D.I. 81, Ex. A)

**16.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **December 9, 2025**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court

determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**17.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**18.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge