D.I. 488

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARMONY BIOSCIENCES, LLC, | ) | |
| HARMONY BIOSCIENCES | ) | |
| MANAGEMENT, INC., BIOPROJET | ) | |
| SOCIÉTÉ CIVILE DE RECHERCHE and | ) | C.A. No. 23-1286 (JLH) (SRF) |
| BIOPROJET PHARMA SAS, | ) | **CONSOLIDATED** |
| | ) | |
| Plaintiffs, | ) | ███████████████ |
| | ) | |
| v. | ) | ███████████████████ |
| | ) | ███████████████████ |
| LUPIN LIMITED, et al. | ) | ███████████████ |
| | ) | |
| Defendants. | ) | REDACTED - PUBLIC VERSION |

**LETTER FROM JEREMY A. TIGAN TO THE HONORABLE SHERRY R. FALLON
REGARDING PLAINTIFFS' MOTION TO STRIKE**

OF COUNSEL:

Christopher N. Sipes
Erica N. Andersen
Megan P. Keane
Brianne (Bharkhda) Sullivan
Cody J. Reeves
Nicole S.L. Pobre
Elaine Nguyen
John Y. Veiszlemlein
A.G. Chancellor
Mishael H. Hibshoosh
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Alexa Hansen
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Ste. 5400
San Francisco, CA 94105
(415) 591-6000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs Harmony Biosciences,
LLC, Harmony Biosciences Management, Inc.,
Bioprojet Société Civile de Recherche and
Bioprojet Pharma SAS*

Original filing date: January 6, 2026
Redacted filing date: January 14, 2026

Dear Judge Fallon,

The Court should strike Paragraphs 101–115, and 122–125 and Exhibits 6–11B, and 13 from the sur-reply expert report of Dr. Robert Dinnebier because they exceed the scope permitted by the Court's November 4, 2025 Order ("the Order"). D.I. 396. The Court's Order permitted MSN to serve a sur-reply report limited in scope to "addressing Dr. Gozzo's peak list analysis and use of the TOPAS® software." *Id.* at 10–11. Dr. Dinnebier's report exceeds the boundaries set by the Court and agreed to by MSN in the parties' scheduling stipulation (D.I. 402), as discussed below.

## I.    Background

Plaintiffs served an opening infringement expert report from Dr. Fabia Gozzo, containing diffractograms from synchrotron x-ray powder diffraction testing on samples of MSN's ANDA Products ██████████████████████ MSN served a rebuttal expert report from Dr. Jennifer Swift containing peak lists that, according to Dr. Swift, showed that ████████████████████████████. Plaintiffs served an 18-page reply report from Dr. Gozzo containing her own peak lists. Ex. 1 (Gozzo Reply) ¶¶ 39–48. MSN moved to strike the peak lists in Dr. Gozzo's reply report. D.I. 369. In the alternative, MSN asked to submit a sur-reply to address Dr. Gozzo's peak lists. *Id.* at n.1.

The Court denied MSN's motion to strike and found that Dr. Gozzo's peak lists were "proper rebuttal" but allowed MSN to serve a sur-reply report "addressing Dr. Gozzo's peak list analysis and use of the TOPAS® software." D.I. 396 at 10–11. As ordered by the Court, the parties submitted a proposed schedule for MSN to submit its sur-reply report. D.I. 402. In the proposed schedule, MSN stipulated that its sur-reply would only address "¶¶ 12 (last sentence), 17 (last two sentences), 29, 34 (first sentence), 39–48, and Ex. 11 of the Reply Expert Report of Dr. Fabia Gozzo"— the paragraphs that MSN sought to strike. D.I. 402; D.I. 369 at 1.

MSN then disclosed a new expert, Dr. Robert Dinnebier, and on November 24, 2025—just one day before the close of expert discovery—served a 65-page report (Ex. 2) with 13 new exhibits (Ex. 3) from Dr. Dinnebier in a clear end-run around the Court's Order. Plaintiffs deposed Dr. Dinnebier on December 17, 2025.

## II.    Argument

Dr. Dinnebier's report exceeds the scope of the Order in three ways.

*First*, Paragraphs 101–107 and Exhibits 6, 7, and 8 of Dr. Dinnebier's report contain analysis regarding the *validity* of the '197 Patent, which Dr. Dinnebier confirmed during his deposition. Ex. 4 (Dinnebier Tr.) 21:3–22:5. For example, Dr. Dinnebier opines in his report that "the powder scan shown in Figure 1 of the '197 Patent is not of sufficient quality to reliably support the detailed structural claims made. Thus, based on my analysis, I do not consider the reported structural model in the '197 Patent to be correct." Ex. 2 (Dinnebier Rpt.) ¶ 104. Dr. Dinnebier conceded in his deposition that he believes the '197 Patent is invalid for this reason. Ex. 4 21:22–22:5 ("The validity is -- so my opinion is, I think the patent is not valid, but this is because this patent contains redundant information which is not conclusive . . . When you ask me about my opinion, the opinion about the patent is because this patent contains a single crystal structure which

doesn't match the powder pattern which is in the patent."). Dr. Dinnebier also opines that one of the claimed peaks at 34.1° "has no well-defined crystallographic meaning with respect to the structure disclosed in the '197 Patent." Ex. 2 ¶105. This analysis is clearly not related to Dr. Gozzo's peak list analysis—instead, it appears to be related to a potential Section 112 invalidity argument.

Opinions relating to invalidity are indisputably outside the scope permitted by the Order—Dr. Gozzo offered *no* opinions or analysis regarding patent validity in any of her reports. This brand-new invalidity analysis should have been presented, if at all, in MSN's opening report on validity in July last year. MSN's late-stage attempt to inject new invalidity analysis into the case in a sur-reply report that should only address infringement is a violation of the Order and prejudicial to Plaintiffs, leaving no opportunity to respond just a few months before trial.[1] Indeed, the Court has already found that Defendants' invalidity expert offered "untimely" opinions regarding written description and lack of enablement. D.I. 450 ¶ 10.

In correspondence, MSN asserted that Dr. Dinnebier's analysis of the data in the '197 Patent was intended "to determine the intensities of the peaks." Ex. 5 (A. Nava Letter) at 1.[2] This is not correct. Dr. Dinnebier's critiques of, for example, the "structural model" provided in the '197 Patent, and his opinion regarding the ████████████████████████, are non-sequiturs even in the context of his discussion of peak intensities, which focuses solely on the intensity ratio between two entirely different peaks. Ex. 2 ¶ 107. Moreover, even if the '197 Patent analysis were related to the peak intensity analysis, that would be of no moment, because Dr. Dinnebier's entire peak intensity analysis is outside of the scope of the Court's Order, for the reasons discussed below.

***Second***, Paragraphs 108–115 and Exhibits 9, 10, 11A, and 11B of Dr. Dinnebier's report are not responsive to Dr. Gozzo's peak list analysis. In these paragraphs, Dr. Dinnebier opines that ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████. Ex. 2 ¶¶ 108, 110, 112. MSN has never made this argument before, and none of this analysis is responsive to Dr. Gozzo's generation of peak lists using TOPAS. Dr. Dinnebier's analysis centers ***entirely*** on the data in the '197 Patent and the ***diffractograms that Dr. Gozzo included with her opening report***, meaning that this analysis could (and should) have been provided in Dr. Swift's rebuttal report. Ex. 3 at Exs. 9, 10, 11A, 11B.

The only time Dr. Dinnebier references Dr. Gozzo's peak lists in this context is when he

---

[1] Plaintiffs provided notice of the instant motion to MSN on December 2, and the parties made efforts to attempt to resolve the dispute over the next several weeks. MSN said it would be stipulate that Dr. Dinnebier would not offer invalidity opinions at trial, but this would not cure all potential prejudice to Plaintiffs because other Defendants could still use Dr. Dinnebier's analysis to support their invalidity arguments.

[2] MSN's December 5 letter references portions of Dr. Dinnebier's report (i.e., "TOPAS PONKCS Analysis" and "Rebuttal to Dr. Myerson's Reliance on Dr. Gozzo's TOPAS Peak List Analysis") that Plaintiffs dropped to narrow the scope of the current dispute before the Court.

concludes that his ███████████████████████████████████████
█ ███████████████████████████████████████ Ex. 2 ¶¶ 112, 114. This is
too thin a reed. By this standard, *any* opinion or analysis which addressed infringement (i.e., the presence or absence of certain peaks) would be within the scope of the Court's Order. The Court's Order did not grant MSN a do-over of its non-infringement case. Because this analysis does not respond to Dr. Gozzo's peak lists, it is outside the scope permitted by the Order.

*Third,* Paragraphs 122–25 and Exhibit 13 of Dr. Dinnebier's report contain analysis of U.S. Patent No. 11,623,920, which MSN asserts describes another crystalline form of pitolisant hydrochloride ███████████████████████████████████████ This analysis is not responsive to Dr. Gozzo's peak lists. MSN's expert Dr. Swift already addressed the '920 Patent in her rebuttal report, Ex. 6 (Swift Rpt.) ¶¶ 94–99, 110, 184, 210, and Dr. Gozzo responded in her reply report, Ex. 1 ¶¶ 49–58. MSN never sought to strike the portions of Dr. Gozzo's reply report regarding the '920 Patent. D.I. 369 at 1. The paragraphs of Dr. Dinnebier's report addressing the '920 Patent thus cannot be within the scope of the sur-reply allowed by the Court, which the Court granted only to cure "[a]ny limited prejudice" associated with Dr. Gozzo's peak list analysis. D.I. 396 at 10.

Although Dr. Dinnebier conspicuously does not cite the portions of Dr. Gozzo's reply report relating to the '920 Patent, it is clear he intends to respond to those portions. In Dr. Gozzo's reply report, she attempted to index the diffractogram provided in the '920 Patent and verify the unit cell parameters, concluding that the '920 Patent likely describes a mixture rather than a pure form. Ex. 1 ¶ 49. In his sur-reply report, Dr. Dinnebier conducted nearly the same analysis— "indexing followed by whole pattern refinement" to determine "lattice parameters"—and came to the opposite conclusion. Ex. 2 ¶¶ 123–25. This is a transparent attempt to smuggle additional rebuttal arguments into the limited sur-reply permitted by the Court.

Dr. Dinnebier's analysis of the '920 Patent bears no relationship to Dr. Gozzo's peak lists. Again, the only connection Dr. Dinnebier attempts to draw between his analysis of the '920 Patent and Dr. Gozzo's peak lists is in his ultimate conclusion: that his analysis "directly contradicts Dr. Gozzo's hypothesis that her peak list in Exhibit 11 of her Reply Report contains peaks unique to claims 1 and 2 of the '197 Patent." Ex. 2 ¶ 124. This broad reading of the Court's Order would render the scope limits imposed by the Court essentially meaningless. This is nothing more than an attempt to re-do Dr. Swift's analysis while giving Plaintiffs no chance to respond.

Plaintiffs expect that MSN will argue that these portions of Dr. Dinnebier's report are within the scope of the Order because they address Dr. Gozzo's "use of the TOPAS® software." D.I. 396 at 11. MSN's interpretation of the Order is unreasonable. MSN was permitted to respond to Dr. Gozzo's use of TOPAS *to create her peak lists*. Any other interpretation renders the limits imposed by the Court meaningless because, under MSN's interpretation, Dr. Dinnebier could have addressed virtually any portion of Dr. Gozzo's opening and reply reports. This is not what the Order states, nor what MSN requested in its motion to strike. *See* D.I. 369 at 1, n.1 ("While a surreply [sic] would be burdensome and disruptive, should Dr. Gozzo's new peak list analysis remain, MSN requests the opportunity to respond."). In any event, Dr. Dinnebier's analysis of the '920 Patent does not substantively address Dr. Gozzo's "use of the TOPAS® software"—he merely disagrees with Dr. Gozzo's ultimate conclusion which, as discussed above, reads the Court's Order far too broadly.

\*    \*    \*

MSN's attempt to inject new invalidity analysis and out-of-scope non-infringement analysis in an expert report served just one day before the close of expert discovery is surprising and highly prejudicial to Plaintiffs. By ambushing Plaintiffs with these untimely theories in a sur-reply report prepared by a brand new expert, MSN has deprived Plaintiffs and their experts of any opportunity to respond in their rebuttal and reply reports. Indeed, Plaintiffs lack clarity regarding the exact contours of the invalidity arguments Defendants may make with Dr. Dinnebier's out-of-scope analysis just six weeks before trial, further underscoring the prejudice and surprise. Far from curing "[a]ny limited prejudice" associated with Dr. Gozzo's peak list analysis, as the Court intended, MSN has prejudiced Plaintiffs by impermissibly attempting a do-over of its non-infringement and invalidity cases. D.I. 396 at 10. Plaintiffs respectfully request that the Court strike the paragraphs and exhibits of Dr. Dinnebier's report identified above.

Respectfully,

/s/ Jeremy A. Tigan

Jeremy A. Tigan (#5239)

JAT/ncf
Enclosures
cc:     Clerk of the Court (by hand delivery)
        Counsel of Record for MSN Defendant
         (by CM/ECF and email)